UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARY T. NEWELL,

              Petitioner,

   v.

JOEL MARTINEZ, Acting Warden,[1]

              Respondent.

Case No.  13-cv-03309-YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY**

## I.   INTRODUCTION

Petitioner Gary T. Newell, a state prisoner currently incarcerated at the Sierra Conservation Center, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2010 conviction and 2011 sentence rendered in the Santa Clara County Superior Court.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Petitioner's claim in his amended petition for the reasons set forth below.

## II.   PROCEDURAL AND FACTUAL BACKGROUNDS

The California Court of Appeal described the relevant procedural and factual backgrounds as follows:

> Defendant was charged by information with assault with a deadly weapon upon Richard Powell.  (§ 245, subd. (a)(1)).[FN 1]  The information further alleged that defendant personally used a dangerous and deadly weapon, a knife, in the commission of the offense (§§ 667, 1192.7); that he personally inflicted great bodily injury upon Powell (§§ 12022.7, subd. (a), 1203, subd. (e)(3)); that he was out of custody on bail at the time of the offense (§ 12022.1); and that he had a prior serious felony conviction and two prior strikes (§§ 667, subds. (a), (b)-(i); 1170.12).  The court granted defendant's motion to bifurcate trial on the on-bail and prior allegations.  Defendant then waived his right to a jury trial on those allegations.
>
> [FN 1:] All further statutory references are to the Penal Code unless otherwise specified.
>
> The People moved in limine to exclude pursuant to Evidence Code

[1] Joel Martinez, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

sections 350 and 352 any evidence of Powell's 2007 arrest for assault unless and until defendant made a claim of self-defense and the court conducted a hearing pursuant to Evidence Code sections 402 and 403. The facts underlying the arrest were that in October 2007, after they had both been drinking alcohol, Powell and his brother got into a physical altercation outside their mother's home during which both of them sustained stab wounds from the same pocket knife. Both brothers were arrested but no charges were filed because the brothers were engaged in mutual combat and the dominant aggressor could not be determined. Prior to trial, the court tentatively ruled that "no bad character [evidence] of the . . . victim . . . or his propensity for violence [would be admitted]" pending the defense establishing a self-defense claim. The court also tentatively ruled that, should defendant testify, his two prior felony section 245 convictions would be "sanitized" as "felonies involving moral turpitude" for purposes of impeachment.

### The Prosecution's Case-in-Chief

In June 2009, Richard Powell was unemployed and living with his girlfriend.[FN 2] He had met defendant when he was in high school, but they lost contact until May 2009. Then, Powell's friend Chris McShane was staying with defendant and Powell began visiting McShane at defendant's house about once a week.[FN 3] On June 25, 2009, Powell gave defendant a $120 computer cord to pay off a $20 marijuana debt he owed defendant. They did not argue or have any type of disagreement at that time.

[FN 2:] Powell testified that he was convicted of theft in November 2006, of misdemeanor leaving the scene of an auto accident in February 2007, and of misdemeanor theft in March 2007. At the time of the events at issue, he was on felony probation but his probation expired in early 2010.

[FN 3:] McShane was on parole at this time.

On the afternoon of June 26, 2009, Powell walked to defendant's house after having purchased a pint of whiskey. He drank the whiskey with a liter of Coke on his way over. Some people Powell did not know were leaving defendant's house when Powell arrived there. Powell jokingly asked them, "What are you doing hanging out with this guy?" Defendant told Powell to go sit in his patio. Powell did so and sat down in a white plastic chair. McShane stood nearby him. Defendant came out to the patio and said, "Don't talk to my friends that way."

Powell was reaching for cigarettes in his pants pocket, which was also where he kept his Swiss army knife on his keychain, when defendant hit him on the left side of his head above his ear. Powell stood up and hit defendant in the face with his fist. They fell to the ground while McShane continued to hit defendant in the face. McShane yelled, "Stop, Rick. You're hurt," but he did not try to separate Powell and defendant. When Powell felt defendant's dogs "nibbling at" him, he stopped hitting defendant, got up, and went to the bathroom. He saw a bloody wound on his head, so he took off his shirt and used it to apply pressure to the wound. As he was

leaving the house, he saw a bloody butcher knife on the kitchen counter and assumed that it was what defendant had used to hit him. Defendant told Powell that he wanted to take him to the hospital, but Powell did not agree to let defendant do so. Powell started to walk home, but when he realized that he had injuries other than to his head, he used a phone belonging to one of defendant's neighbors to call 911.[FN 4] He then sat down on the curb and waited for help.

[FN 4:] A recording of the phone call was played for the jury.

Defendant and McShane were standing outside by defendant's front door when Powell walked away. Defendant, McShane, and defendant's wife Carrie Newell[FN 5] then went back and forth from inside their house to a car parked in the driveway. After that, they got into the car and drove off in the opposite direction from which Powell had walked. Shortly thereafter, the police arrived in the area.

[FN 5:] In order to avoid confusion and while intending no disrespect, we will refer to defendant's wife by her first name.

Around 5:40 p.m., on June 26, 2009, San Jose police officers and paramedics were dispatched to the area of defendant's home on the report of a stabbing. They found Powell sitting on the curb. He was holding a bloody shirt to his head, he had blood all over him, he smelled of alcohol, and he was yelling, "I can't believe Gary did this." The paramedics had a difficult time treating Powell because he was upset and he kept moving around. One officer had to hold a piece of gauze to a two to three inch laceration in Powell's underarm area because it was bleeding profusely. Powell said that defendant had hit him with a meat cleaver. Powell was taken by ambulance to a hospital where he received 18 staples for two wounds on his head and eight to ten stitches for wounds on his underarm and leg. A closed Swiss army knife was later found nine feet from where Powell's bloody clothes were left lying on the curb. The knife did not have any blood on it. Powell testified that he had given his wallet, keychain, and Swiss army knife to an officer while in the ambulance.

Inside defendant's home, officers found drops of blood on the bathroom floor, on the living room floor, on the door sill between the living room and the screened-in patio, and on the front of the backrest of a white plastic chair in the patio. The concrete floor of the patio was damp and had several pools of water. Nothing else in the patio was wet. No meat cleavers were found in or outside the house and no knife was found with blood on it.

Defendant was arrested at a hospital about one hour after officers had responded to Powell's location. Defendant had received injuries to his nose and cheek. At the time he was booked into custody, he had $2,716 on him.

***The Defense Case***

On June 26, 2009, Patrick Shane was renting a room in defendant's home. McShane also stayed at the home off and on. Shane testified

that that evening, he was at a neighborhood park with defendant's wife when McShane arrived and whispered something to her. She ran home and Shane followed her. When Shane arrived at the house, he saw Powell standing in the hallway with blood on him, defendant handing McShane a meat cleaver and a knife, and blood in the patio area and on the wall near the bathroom. Everybody but Shane then left the house. Shane used a towel to clean up blood in the patio, kitchen, and bathroom, and he discarded the towel behind the washing machine in the garage. Officers came to the house after he was done.

Carrie testified that on the evening of June 25, 2009, she discovered that her son's bottle of prescription codeine medication was empty, and she and defendant suspected Powell had taken it. On the afternoon of June 26, 2009, defendant told her that he had received several phone calls from Powell and that he had told Powell not to come over to the house. However, Powell arrived at their house shortly thereafter when defendant was outside in the patio with two people who were there to purchase a puppy. After Carrie let Powell into the house, she took two children to the park, and Shane followed them. When McShane came to the park and told her to return to the house, she left the children with a friend and ran home. She found defendant and Powell, both of whom were bleeding, and defendant told her that he needed to go to the hospital. She left to check on the children, and she does not know how her husband got to the hospital.

Defendant testified in his own defense. He has an August 2004 misdemeanor conviction and two April 2009 felony convictions, all involving moral turpitude. During the week before June 26, 2009, he was showing the puppies of his purebred dogs at various parks, trying to sell them. On June 25, 2009, Powell brought defendant a computer adapter that he said he had stolen from Radio Shack. Defendant gave Powell some marijuana in exchange for the adapter. Defendant has a medical marijuana card and he grows marijuana in his yard. After Powell left, defendant determined that his son's prescription codeine medication was missing.

On June 26, 2009, Powell called defendant several times, and defendant told Powell that he was no longer welcome in defendant's home. That afternoon, defendant took two of his puppies to a park near his home. Four people there said that they were interested in purchasing a puppy, and defendant invited them to his home to see the entire litter. The four individuals came to defendant's home and they each gave him $600 as a deposit for a puppy. While he was bending over the litter of puppies in his kitchen, he was hit by [someone][2] on the side of his face with the back end of a meat

---

[2] The state appellate court's factual summary indicates that Petitioner "was hit by *defendant* on the side of his face . . . ." *Newell*, 2012 WL 3091095, at *3 (emphasis added). However, the Court corrects this typographical error to indicate that Petitioner was hit by "someone" as indicated in his testimony as follows: "I was bent over looking for one of the tan and white dogs, one of them that was a female. Because they're too young, you can't tell which one is a female by just looking. So I was checking to see which one was a female. And I got hit in the face with a meat cleaver, with the back end of a meat cleaver." 5RT 748.

cleaver.  He received a cut on his nose and left cheek.  He did not know that Powell had entered his home until he was hit.

Defendant turned around and "tackled" Powell and a man who had come to buy a puppy.  The meat cleaver slid from Powell's hand and across the kitchen floor, so defendant grabbed it.  He stood up and saw Powell coming at him, brandishing a kitchen knife.  Defendant then hit Powell twice on the head with the meat cleaver.  They got into a "little wrestling match," which went on through the kitchen, living room, and patio.  When it stopped, Powell was bleeding from his head and defendant offered him aid.  Defendant got Powell some towels and tried to bandage his head wound.  He offered to take Powell to the hospital but Powell was not willing to go because he thought the police would be called.  Defendant and Powell discussed how they could make up a story about what had happened so that neither of them would get in trouble; they could say that they had been "jumped" in the park by a few people they did not know.

A neighbor gave defendant a ride to the hospital.  During the ride and again in front of the hospital, defendant called 911.  He did not tell the police anything about Powell having attacked him with a knife.  Besides the cut on his face, defendant was also treated for a cut on his neck and a cut on his finger.  He does not know what happened to the meat cleaver or the knife.

### The Prosecution's Rebuttal Case

Powell testified that he did not steal the computer cord from Radio Shack that he gave to defendant.  He further testified that he had an allergic reaction to codeine when he was a child.  He did not steal any codeine from defendant's house on June 25, 2009.  He bought marijuana from defendant at least once a week, and he once saw defendant sell marijuana to other people.  He did not call defendant on June 26, 2009, before showing up at his house.  He did not take or handle any knives from defendant's kitchen while he was at defendant's house.

San Jose Police Officer Michael Ceballos testified that he was one of a group of officers dispatched to the alleged stabbing at defendant's home on June 26, 2009, sometime after 5:30 p.m.  There he was assigned to speak to defendant's neighbors.  About an hour later, he and other officers were dispatched to the hospital to see defendant and his wife.  Defendant's wife told Officer Ceballos that she was not at the house that afternoon, that she was at the park and then at a friend's house.

A recording of defendant's 911 call while at the hospital was played for the jury.  During the call, defendant stated that he did not know who had hit him and that he did not "even know what nationality they were."  He said that he was hit while showing his puppies to people he did not know.

*People v. Newell*, H036587, 2012 WL 3091095, *1-4 (Cal. Ct. App. July 31, 2012) (bracketed footnotes in original and brackets and footnote 2 added).

United States District Court
Northern District of California

1      On June 18, 2010, the jury trial commenced.  1CT 114.

2      On July 7, 2010, the jury found Petitioner guilty as charged.  1CT 172.  The jury also

3 found true the allegations that Petitioner personally used a dangerous and deadly weapon, a knife,

4 during the commission of the offense, and that he personally inflicted great bodily injury upon

5 Powell.  1CT 172.  The court found true the allegations that Petitioner was out on bail at the time

6 of the offense, and that he had two prior strikes and one prior serious felony conviction.  1CT 173.

7      On January 14, 2011, the trial court denied Petitioner's motion to strike his prior "strike"

8 convictions under *People v. Romero*, 13 Cal. 4th 531 (1996).  2CT 362.  The court then sentenced

9 Petitioner to state prison for a term of thirty-five years to life.  2CT 362-364.

10      On July 31, 2012, the California Court of Appeal affirmed the judgment of conviction.

11 Resp't Ex. 6; *Newell*, 2012 WL 3091095, at *7.

12      On October 17, 2012, the California Supreme Court denied review.  Resp't Ex. 8.

13      On March 12, 2015, Petitioner filed his amended petition, which is the operative petition in

14 this action.  Dkt. 13.  He alleges that the trial court abused its discretion and violated his Sixth and

15 Fourteenth Amendment rights to present a complete defense when it excluded evidence of

16 Powell's 2007 arrest for assault.  *Id.* at 5, 18-19.

17      On April 17, 2015, this Court issued an Order to Show Cause.  Dkt. 14.  Respondent filed

18 an Answer, and Petitioner filed a Traverse.  Dkts. 16, 18.  The matter is fully briefed and ripe for

19 adjudication.

20 **III.   LEGAL STANDARD**

21      A federal court may entertain a habeas petition from a state prisoner "only on the ground

22 that he is in custody in violation of the Constitution or laws or treaties of the United States."  28

23 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996,

24 a district court may not grant a petition challenging a state conviction or sentence on the basis of a

25 claim that was reviewed on the merits in state court unless the state court's adjudication of the

26 claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

27 clearly established Federal law, as determined by the Supreme Court of the United States; or

28 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong

applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v.*

*Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual

determinations, s*ee Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first

clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently

than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529

U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court

authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the

governing legal principle from the Supreme Court's decisions but "unreasonably applies that

principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas review may

not issue the writ "simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly."

*Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.

*Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will

not be overturned on factual grounds unless objectively unreasonable in light of the evidence

presented in the state-court proceeding."  *See Miller-El*, 537 U.S. at 340; *see also Torres v.*

*Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  Moreover, "a determination of a factual issue made

by a State court shall be presumed to be correct," and the petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C.

§ 2254(e)(1).

Even if constitutional error is established, habeas relief is warranted only if the error had a

"substantial and injurious effect or influence in determining the jury's verdict."  *Penry v. Johnson*,

532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating

state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."

United States District Court
Northern District of California

7

1   *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).  In applying the

2   above standards on habeas review, this Court reviews the "last reasoned decision" by the state

3   court.  *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

4         When there is no reasoned opinion from the highest state court to consider the petitioner's

5   claims, the court looks to the last reasoned opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06

6   (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  Thus, a federal court

7   will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and

8   analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court

9   precedent.  *See Ylst*, 501 U.S. at 804-06; *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir.

10  2000).  The last reasoned decision in this case is the state appellate court's unpublished disposition

11  issued on July 31, 2012.  *See* Resp't Ex. 6; *Newell*, 2012 WL 3091095, at *1-7.

12  **IV.     LEGAL CLAIM**

13        **A.     Background**

14        Defense counsel had sought to cross-examine Powell about the 2007 incident in which he

15  was arrested for a knife fight with his brother, Justin, for which no charges were filed, for the

16  purpose of showing Powell's propensity for violence.[3]  5RT 751-754.  As mentioned above, the

17  prosecution filed a motion in limine to exclude the aforementioned evidence relating to Powell's

18  2007 arrest for assault pursuant to California Evidence Code §§ 350 and 352 "unless and until

19  [Petitioner] made a claim of self-defense and the court conducted a hearing pursuant to Evidence

20  Code sections 402 and 403."  *Newell*, 2012 WL 3091095, at *1.  As further explained below, the

21  trial court conducted such a hearing and excluded the aforementioned evidence.  *See id.* at *4-5.

22        In Petitioner's sole claim in this action, which was raised on direct appeal, he asserts that

23  the trial court restricting his cross-examination of Powell denied him a meaningful opportunity to

24  present a complete defense and violated his rights under the Sixth and Fourteenth Amendments.

25  Dkt. 13 at 5, 18-19.

26

27        ———————————
          [3] As a general rule, evidence of a mere arrest is inadmissible for impeachment.  *See People*

28  *v. Lopez*, 129 Cal. App. 4th 1508, 1523 (2005).  However, the record shows that Petitioner
    indicated that he intended to ask Powell about the incident, rather than the arrest.  5 RT 754.

United States District Court
Northern District of California

The state appellate court gave the following background relating to this claim:

> After defendant testified that he had been hit from behind while bending over his litter of puppies, the court informed the parties outside the presence of the jury that it believed that evidence of "the character trait of the victim for violence" "through specific instances of conduct" was admissible, but that the court still needed to hear argument from the parties regarding the admissibility of the defense's proposed evidence under Evidence Code section 352. The court specifically asked defense counsel "why this unduly won't consume my time." Counsel responded, "Well, it's going to be real quick. He's going to get one question. If he answers it honestly, that should be the end of it. If he doesn't answer it honestly, then . . . [¶] . . . [¶] . . . I'll keep asking more questions." "And all I'm going to ask him is if, in fact, on such a[nd] such a date he was involved in a[n] altercation with his brother which resulted in a knife wound in his brother. End of question." "That's it."

> The prosecutor argued that "the fact of the matter is . . . that the allegations involving the victim assaulting his brother have never been proven, [and] are disputed." "I think the fact of whether . . . someone hasn't been charged is relevant to the [Evidence Code section] 352 analysis and also to an undue amount of time because Mr. Powell is not going to admit that he was the aggressor or that he didn't have the right to use self-defense in this fight involving his brother. In fact, just the opposite. [¶] And the truth is that it's not just his brother that had an injury. Actually, Mr. Powell had injuries. And Mr. Powell . . . had defensive injuries in the sense that he was stabbed in the back." The prosecutor told the court that she would have to call Powell's mother and two brothers to testify as well as the officers who took statements at the scene, and she agreed with the court's statement that "we're going to have a trial in a trial." The prosecutor said that she would need "[t]hree days" to present that evidence to the court.

> The court stated that it would review the police reports on the incident and "evaluate this for myself." The court also informed defense counsel, "if I allow you to ask the complaining witness about his prior incidents, then [the prosecutor] is going to be able to ask your client about his." "Because it involves a propensity for violence." Defense counsel stated, "All right . . . . We're going to be trying cases upon cases upon cases."

> The following day, after defendant testified that it was Powell who hit him with the meat cleaver and that he did not hit Powell with the same cleaver until after he saw Powell then brandishing a knife, the court revisited the issue of the proposed propensity-for-violence evidence outside the presence of the jury. The court stated that it had read the police reports regarding the incident involving Powell and his brother and that, "[w]hile I think three days may be too much and I don't think that Mr. Powell's mother has anything to offer there, I think something about two days-plus is probably right. And given that the length of . . . the evidence in this case has been maybe four days at the most, seems to me that that might be an undue consumption of the Court's time. [¶] So before I make my

final decision, I'm going to give you both a chance to express your views." Both parties submitted the matter without further argument.

The court then ruled: "[Defense counsel], I'm not going to allow you to question Mr. Powell about that incident. [¶] That means that the People cannot ask the defendant any more than the bare facts of his convictions." The court stated that defendant's October 2008 section 245 conviction "would have been relevant as well because of the recency, but it isn't any longer because, . . . if you don't go into that 2007 incident involving Mr. Powell, then the People can't go into the particulars of this incident."

*Newell*, 2012 WL 3091095, at *4-5 (footnote omitted).

### B.    State Court Opinion

In a reasoned opinion, the state appellate court summarized Petitioner's claim and affirmed

the aforementioned ruling of the trial court, stating as follows:

Defendant now contends that the court abused its discretion and violated his Sixth and Fourteenth Amendment rights to present a complete defense when it excluded evidence that Powell was involved in an altercation with his brother during which his brother received a knife wound.  Defendant argues that the evidence was highly probative on the issue of Powell's propensity for violence, and that any undue consumption of time did not substantially outweigh the probative value of the evidence.

The People contend that the trial court properly exercised its discretion "to avoid a trial within a trial."

"Evidence Code section 1101, subdivision (a) provides that 'evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion.'  Evidence Code section 1103, subdivision (a)(1) provides an exception to Evidence Code section 1101, subdivision (a) when a defendant offers evidence regarding the character or trait of a victim 'to prove conduct of the victim in conformity with the character or trait of character.'"  (*People v. Gutierrez* (2009) 45 Cal. 4th 789, 827 (*Gutierrez*).)

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  "This discretion allows the trial court broad power to control the presentation of proposed impeachment evidence ""to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.'  [Citation.]""'  (*People v. Mills* (2010) 48 Cal. 4th 158, 195 (*Mills*); *People v. Sapp* (2003) 31 Cal. 4th 240, 289 (*Sapp*).)  ""Moreover, impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not

present.  Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' [Citation.]"  (*Sapp, supra*, at p. 289; see also *People v. Lavergne* (1971) 4 Cal. 3d 735, 742 [the admissibility of collateral impeachment evidence is subject "to the trial court's 'substantial discretion' under [Evidence Code] section 352 to exclude prejudicial and time-consuming evidence"].)  Accordingly, the trial court may exclude under Evidence Code section 352 evidence of the aggressive and violent character of the victim.  (See *People v. Wright* (1985) 39 Cal. 3d 576, 587-588; *People v. Hoyos* (2007) 41 Cal. 4th 872, 912.)

"Where . . . a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal. 3d 308, 316; *Gutierrez, supra*, 45 Cal. 4th at p. 828.)  "'"In other words, . . . the court [must] exceed[] the bounds of reason, all of the circumstances being considered." [Citation.]  In most instances the appellate courts will uphold the exercise of discretion even if another court might have ruled otherwise.' [Citations.]  "'The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon mechanically automatic rules . . . ." [Citation.]' [Citation.]"  (*People v. Ardoin* (2011) 196 Cal. App. 4th 102, 121.)

While the proposed evidence that Powell previously engaged in violent conduct involving a knife, which resulted in a stab wound to his brother, was probative of Powell's propensity for violence, we conclude that under the circumstances presented here the trial court acted within its discretion in precluding the defense from cross-examining Powell regarding that conduct.

The prior incident of violence that defense counsel wanted to question Powell about involved a verbal fight between Powell and his adult brother that escalated into a physical fight.  As a result of the fight, both men received stab wounds from the same pocket knife.  Powell received a stab wound in his back and his brother received a stab wound in his abdomen, neither of which was life threatening.  Neither of the men could say who started the physical fight.  Nor could their teenage brother, who witnessed a portion of the fight.  Both men were placed under arrest, but neither arrest resulted in formal charges being filed.  Although defense counsel stated that all he wanted to do was to ask Powell if he had been involved in an altercation that resulted in a knife wound to his brother, based on the underlying facts of the altercation at issue, Powell would have to be allowed to explain his version of the events and the prosecutor would have to be able to bring in additional witnesses to testify about what they saw and heard, which could entail upwards of two days of testimony, an undue amount of time given the otherwise short length of the trial.  Accordingly, the trial court did not abuse its discretion in excluding the evidence of Powell's prior altercation with his brother as necessitating an undue

consumption of time pursuant to Evidence Code section 352. (*Mills*, *supra*, 48 Cal. 4th at p. 195; *Sapp*, *supra*, 31 Cal. 4th at p. 289.)

Even if we assume for purposes of this discussion that the trial court erred or abused its discretion in excluding evidence of Powell's prior altercation with his brother, any such error was harmless because it would not have resulted in a more favorable verdict. (*People v. Watson* (1956) 46 Cal. 2d 818, 837; *People v. Bunyard* (1988) 45 Cal. 3d 1189, 1213 (*Bunyard*); *Gutierrez*, *supra*, 45 Cal. 4th at p. 828.) Defendant testified regarding his relationship with Powell and described his version of the altercation with Powell on the afternoon Powell sustained his injuries. The jury also was aware of Powell's two prior theft offenses, his marijuana use, his use of alcohol on the day of the incident, and his lack of truthfulness about the incident when he was being treated at the hospital, all which would tend to impeach his testimony. The trial court found that if defendant was allowed to question Powell about his prior acts of violence, then the prosecutor should be able to question defendant about his prior acts of violence. The court had previously ruled that evidence of the facts underlying defendant's priors would not be admitted even if defendant testified. Defendant had been convicted of two counts of violating section 245 based on his attacks on two victims at a 7-Eleven store, at least one of which was unprovoked. The presentation of this evidence of defendant's "propensity for violence," in addition to the proposed evidence of Powell's "propensity for violence" would not only consume considerable time, it would divert the attention of the jury from the case at hand. (*See People v. Bittaker* (1989) 48 Cal. 3d 1046, 1097; *People v. Tidwell* (2008) 163 Cal. App. 4th 1447, 1457.) There is no reasonable probability that defendant would have obtained a more favorable outcome had he been permitted to introduce evidence of Powell's prior altercation with his brother and had the prosecutor been permitted to introduce evidence of the facts underlying defendant's prior convictions. (*Bunyard*, *supra*, at p. 1213; *Gutierrez*, *supra*, at p. 828.)

Lastly, although defendant's defense presented the issue of who struck the first blow, and why Powell might have done so, which was central to the resolution of the charges against defendant, "this does not mean the trial court constitutionally was compelled to permit defendant to introduce all possibly relevant evidence on these subjects despite . . . the possible effect upon the jury's ability to remain focused on the issues before it (rather than becoming sidetracked on collateral questions), and the potentially significant amount of time entailed in admitting the evidence in a manner fair to both sides." (*People v. Fuiava* (2012) 53 Cal. 4th 622, 665.) A state court's application of the ordinary rules of evidence, including the rule stated in Evidence Code section 352, generally does not infringe upon the defendant's constitutional right to present a complete defense. (*Id.* at pp. 665-666; *People v. Brown* (2003) 31 Cal. 4th 518, 545; *People v. Snow* (2003) 30 Cal. 4th 43, 90.) No Sixth or Fourteenth Amendment violation has been shown.

*Newell*, 2012 WL 3091095, at *5-7.

United States District Court
Northern District of California

C.      **Applicable Law**

1.      **Right to Cross-Examine Witnesses Against Him**

A defendant meets his burden of showing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness's] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).  However, the Confrontation Clause does not prevent a trial judge from imposing reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant.  *Id.* at 679.  The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.  *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court inquires whether the evidence was relevant, whether there were other legitimate interests outweighing the defendant's interests in presenting the evidence, and whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness.  *United States v. Beardslee*, 197 F.3d 378, 383-84 (9th Cir.), *amended*, 204 F.3d 983 (9th Cir. 2000).

2.      **Right to Present a Defense**

The United States Constitution gives a criminal defendant the right to present a defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted).  The Compulsory Process Clause of the Sixth Amendment preserves the right of a defendant in a criminal trial to have compulsory process for obtaining a favorable witness. *Washington v. Texas*, 388 U.S. 14, 19 (1967).  But the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Id.* at 16.[4]  The Sixth Amendment right to present relevant testimony "may,

_____

[4] To determine whether the excluded evidence is relevant and material, and vital to the

13

United States District Court
Northern District of California

in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."

*Chambers v. Mississippi*, 410 U.S. 284, 295 (1973); *Taylor v. Illinois*, 484 U.S. 400, 410-11

(1988) (right to compulsory process is not absolute).  The Court has explained that a defendant

"'does not have an unfettered right to offer [evidence] that is incompetent, privileged or otherwise

inadmissible under standard rules of evidence.'"  *Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996)

(plurality opinion) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)) (brackets in original).

Even relevant evidence may be excluded on account of certain evidentiary rules.  *See id.* at 42.

"[T]o say that the right to introduce relevant evidence is not absolute is not to say that the Due

Process Clause places *no* limits upon restriction of that right"; rather, it means that the defendant

has the heavy burden to show that the decision to exclude evidence "'offends some principle of

justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"

*Id.* at 43 (citation omitted).  Even if the exclusion of evidence was a constitutional error, habeas

relief is not available unless the erroneous exclusion had a "'substantial and injurious effect or

influence in determining the jury's verdict.'"  *Brecht*, 507 U.S. at 638.

> **D.      Analysis**

The California Court of Appeal's affirmation of the trial court's exclusion of the evidence

relating to Powell's 2007 arrest for assault under California Evidence Code § 352 was not contrary

to, or an unreasonable application of clearly established federal law.  Section 352, like its federal

analog, Federal Rule of Evidence 403, is a rather commonplace kind of evidentiary rule allowing

the exclusion of evidence where its probative value is substantially outweighed by the probability

that its admission will necessitate undue consumption of time, be unduly prejudicial, confuse the

issues or mislead the jury.  As explained below, the application of section 352 in Petitioner's case

to exclude the aforementioned evidence did not result in a Confrontation Clause violation.  Nor

did it violate Petitioner's right to present a defense.

---

defense, the court may consider the following factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  *See United States v. Stever*, 603 F.3d 747, 755-56 (9th Cir. 2010) (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).

United States District Court
Northern District of California

Petitioner asserts in his amended petition and traverse that restricting his cross-examination of Powell denied him a meaningful opportunity to present a complete defense under *Crane v. Kentucky*, 476 U.S. 683 (1986) and *Davis v. Alaska*, 415 U.S. 308 (1974).  *See* Dkt. 13 at 22-23; Dkt. 18 at 5-6.  However, the United State Supreme Court cases on which Petitioner has relied do not show his entitlement to relief as both cases are distinguishable from the instant matter.

In *Crane*, the defendant, a 16-year-old boy, had been detained for a protracted period of time, and eventually confessed not only to the liquor store robbery he was suspected of, but to "every unsolved crime in the county," including shooting a police officer, robbing a hardware store, and robbing several people at a bowling alley.  476 U.S. at 684, 691.  The Supreme Court held that the defendant's constitutional right to present a defense was violated where the state court excluded evidence using a rigid state procedural rule to exclude evidence essential to the defense.  *Id.* at 690-91.  There, Kentucky had a rule that a pretrial determination that a confession was voluntary was conclusive and could not be re-litigated at trial.  *Id.* at 686-87.  The trial court had applied this rule to exclude evidence about the circumstances of the defendant's confession where the defense wanted to present the evidence to undermine the credibility of that confession.  *Id.* at 687.  The Supreme Court explained that the state court wrongly assumed that "evidence bearing on the voluntariness of a confession and evidence bearing on its credibility fall in conceptually distinct and mutually exclusive categories."  *Id.* at 687.  Contrary to the state court's assumption, the same evidence about the "manner in which a statement was extracted" may be relevant to both the legal question (for the judge) of the statement's voluntariness, as well as the "ultimate factual issue" (for the jury) of the defendant's guilt.  *Id.* at 688-89.  Kentucky's "blanket exclusion of the proffered testimony about the circumstances of petitioner's confession deprived him of a fair trial," by excluding "competent reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence" and without any countervailing valid state justification for its exclusion.  *See id.* at 690.  Thus, the Supreme Court held that it was error to exclude evidence that was "central to the defendant's claim of innocence" and "indispensable" to the defense.  *Id.* at 690-91.  By contrast, here, the evidence excluded was evidence of the complaining witness's prior arrest, which was excluded under what was earlier

15

referred to as the most commonplace of evidentiary rules: the requirement that the probative value of the evidence not be outweighed by undue time-consumption or issue confusion.

Meanwhile, in *Davis v. Alaska*, the State's crucial identification witness was on probation after having been adjudicated a juvenile delinquent.  The Supreme Court held that the defendant's Sixth Amendment right to cross-examine the witness was violated when the state court prohibited any reference to the witness' juvenile adjudication pursuant to a state policy protecting the anonymity of juvenile offenders.  *Id.* at 310-11, 320-21.  Due to the critical role of this witness, and the serious damage to the State's case that might have been done if the jury believed the witness had made a faulty identification due to worries about his own probation,  the Supreme Court concluded that "the right of confrontation is paramount to the State's policy of protecting a juvenile offender." *Id.* at 319.  Petitioner argues that his case is "similar to *Davis* . . . [because] Powell's testimony provided 'a crucial link' in securing Petitioner's conviction."  Dkt. 18 at 6. However, the Court finds that *Davis* is distinguishable from the instant matter because the evidence in *Davis* was excluded under a policy concern unrelated to the value of the evidence. Again, here, the evidence of Powell's 2007 arrest was excluded under a more commonplace kind of evidentiary rule, California Evidence Code § 352.

Furthermore, Petitioner has not identified any Supreme Court holding to the effect that an evidence rule that (like California Evidence Code § 352) allows the exclusion of evidence when its probative value is outweighed by undue time-consumption or issue confusion violates the constitutional rights to present a defense or due process.  Thus, Petitioner has failed to show that the California Evidence Code § 352 "offends some 'fundamental principle of justice'" such that the rule itself violates a criminal defendant's right to due process. *See Montana v. Egelhoff*, 518 U.S. at 43; c*f. Van Arsdall*, 475 U.S. at 679 ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant").

The Confrontation Clause guarantees criminal defendants the right of cross-examination,

which includes exploration of bias.[5]  *See Davis*, 415 U.S. at 315-316.

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant.

*Van Arsdall*, 475 U.S. at 679.  Exclusion of impeaching evidence on collateral matters which has only slight probative value on the issue of veracity does not infringe on the defendant's right of confrontation.  *People v. Jennings*, 53 Cal.3d 334, 372 (1991).  This is because "'the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  *Van Arsdall*, 475 U.S. at 679 (quoting *Fensterer*, 474 U.S. at 20).  The exclusion of specific lines of cross-examination is not error if there is "no substantial likelihood" that "the jury's impression of [the witness's] credibility" would have been changed.  *Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013).  Here, the value of any evidence of Powell's propensity for violence stemming from his 2007 arrest for assault depended upon proof that he had been the aggressor in his fight with his brother.  "This would in effect force the parties to present evidence concerning [the prior incident] which never reached the point of formal charges.  Such a proceeding would consume considerable time, and divert the attention of the jury from the case at hand."  *People v. Bittaker*, 48 Cal.3d 1046, 1097 (1989).  Thus, the state court's application of section 352 to exclude such evidence was not unreasonable.  The record shows that Powell was subject to lengthy cross-examination, 3RT 285-339, 352-357, including impeachment with his three prior convictions for crimes involving moral turpitude, 3RT 301, 339.  Contrary to Petitioner's claims, denying him the opportunity to conduct a trial within a trial in the hope that he might develop impeachment evidence did not infringe his right to confrontation or to present a defense.  *See Van Arsdall*, 475 U.S. at 679; c*f. Hayes v. Ayers*, 632 F.3d 500, 517-20 (9th Cir. 2011) (concluding that trial court's

---

[5] That Petitioner in this case sought to impeach Powell on his alleged propensity for violence, rather than bias, is irrelevant for constitutional purposes.

1     quashing of subpoena to witness's attorney did not offend defendant's Confrontation Clause rights

2     because attorney's testimony would have been of low probative value and on collateral point to

3     impeach prosecution witness).  Therefore, the state appellate court's decision affirming the trial

4     court's limitation on Powell's cross-examination was not contrary to, or an unreasonable

5     application of, clearly established Federal law.  *See Sully*, 725 F.3d at 1075 (witness subjected to

6     "extensive cross-examination that tested her biases, motivations to lie, and consistency"; excluded

7     cross-examination topic was on "peripheral" issue).

8            The state appellate court also reasonably found that even if the trial court should have

9     permitted Petitioner to cross-examine Powell about the 2007 arrest, the error was harmless

10    because it was not reasonably probable it would not have resulted in a more favorable verdict.

11    *Newell*, 2012 WL 3091095, at *7 (citing *People v. Watson*, 46 Cal. 2d 818, 837).  "[T]he *Watson*

12    harmless error standard is the standard applied by the California state appellate courts in reviewing

13    non-constitutional magnitude, trial type errors."  *Bains v. Cambra*, 204 F.3d 964, 971 n.2 (9th Cir.

14    2000); *accord Ortiz v. Yates*, 704 F.3d 1026, 1033-1034 & n. 4 (9th Cir. 2012).  Thus, the state

15    appellate court effectively determined that even if the trial court erred, the error did not rise to the

16    level of a constitutional violation.  And, as noted above, that determination was reasonable.

17           In the instant matter, Petitioner was not precluded from putting on a defense, cross-

18    examining Powell about the charged offense, or impeaching Powell on a myriad of issues.

19    Petitioner cross-examined Powell on a wide array of topics intended to undermine his credibility,

20    including that he had no source of income on the day of the altercation (3RT 285), on the day of

21    the altercation he combined a pint of bourbon with two prescribed drugs with which he was not

22    supposed to drink alcohol (3RT 292-294), his lack of recollection about things he said to the

23    police immediately after the incident (3RT 298-301), his prior convictions for crimes involving

24    moral turpitude (3RT 301, 339), and false information he had provided when he was at the

25    hospital being treated for his wounds (3RT 303-311).  Indeed, Petitioner recalled Powell as his

26    own witness for the purpose of demonstrating that Powell had a foggy recollection of what he did

27    in the hours leading up to the altercation with Petitioner and sometimes drank to the point of

28    blacking out.  6RT 906-910.  The state appellate court reasonably determined that, even if the trial

court had allowed Petitioner the opportunity to benefit from a trial within a trial to determine the aggressor in Powell's fight with his brother, there is no substantial likelihood that the excluded line of cross-examination would have resulted in a more favorable verdict. *See Newell*, 2012 WL 3091095, at *7. In light of the substantial opportunity Petitioner had to present his own testimony and to cross-examine Powell, the state appellate court was reasonable in determining that the limitation on cross-examination of Powell did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 637.

Accordingly, the state appellate court's rejection of this claim was not contrary to or an unreasonable application of clearly established Federal law on the constitutional rights to cross-examine the witnesses against him or to present a defense. Therefore, this claim is DENIED.

## V.      CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

## VI.     CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.      Petitioner's claim in his amended petition is DENIED, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2.      The Clerk of the Court shall enter judgment, terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated:  July 29, 2016

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge